MARSH & CO. v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

1. **Pleading:** CONTRACT WITH FIRM: PARTIES. Plaintiff, a copartnership, sued on a contract alleged to have been made with it by the defendant. In an amended petition plaintiff alleged that the contract was made by one B. for the benefit of himself, M., and another person named B., and the evidence showed that these three persons were the partners constituting the firm of M. & Co., plaintiff. *Held* that the original and amended petitions showed that the contract was made for the benefit of the plaintiff firm, and that it could maintain an action thereon in the firm name. (See Code, sec. 2543, and cases cited in opinion.)

2. **Contract:** CONDITION: PLEADING AND PROOF. In an action upon a contract to pay rebates upon the breaking of a pool between defendant and other railway companies, it was not necessary for

plaintiff to allege or prove the parties to the pool nor the terms thereof, but it was sufficient, to sustain a verdict for plaintiff, to introduce evidence tending to show the existence of the pool and the breaking thereof.

3. **Railroads:** POOLS : POWER OF AGENT TO CONTRACT FOR REBATES. A contract to pay a rebate on stock shipped over a certain line of road is but a contract for a special rate, and evidence that defendant's stock-agent had made contracts for special rates which the company had recognized and performed, was evidence of his authority to contract for rebates on future shipments, notwithstanding the existence of a pool; for it is the pool which makes it necessary to contract for rebates rather than for special rates, and such contracts necessarily relate to the future.

4. **Continuance:** AMENDMENT OF PETITION, The court in this case properly allowed plaintiffs to file an amendment to their petition, stating more fully the form and substance of the contract sued on, but leaving their claim unchanged. (Code, secs. 2686, 2689.) And since by the original petition defendant was sufficiently advised of plaintiffs' claim to make full preparation for its defense, the filing of the amendment was no ground for a continuance.

*Appeal from Appanoose District Court.*—HON. DELL STUART, Judge.

FILED, FEBRUARY 5, 1890.

ACTION to recover upon a contract whereby defendant agreed to pay to plaintiffs rebates at the rate of $19.50 per car upon twenty-nine carloads of live stock shipped by plaintiffs over defendant's railroad. There was a judgment upon a verdict for plaintiffs. Defendant appeals. The cause has before been in this court. See 75 Iowa, 361.

*T. S. Wright* and *Tannehill, Vermilion & Haynes,* for appellant.

*T. M. Fee* and *George D. Porter,* for appellees.

BECK, J.—I. In view of questions arising in argument which involve the case as made by the allegations of the petition and amended petition, it is necessary to set out these pleadings in full. The abstract

shows that the petition alleges that plaintiffs, in the language of the abstract, "are a copartnership, and were engaged in shipping live stock in the years of 1886-87, and that the defendant is a common carrier; that, in the fore part of the year 1886, defendant, through its duly authorized agent, one Conklin, made a verbal contract with the plaintiffs that on all shipments made by the plaintiffs from Seymour, Iowa, to Chicago, of live stock, the defendant would grant the plaintiffs, and pay them, the sum of $19.50 a carload, as a rebate on the regular schedule price of fifty-two dollars per car; that during the year 1886 and January, 1887, the plaintiffs shipped from Seymour, Iowa, to Chicago, Illinois, over the line of defendant's railway, twenty-nine carloads of live stock; that there was deducted from the selling price of said stock, and paid to defendant, the sum of fifty-two dollars a car; that the defendant has failed to pay said rebate to the plaintiffs, as he promised to do; that said shipments were made over said defendant's railway, relying on said agreement as to the amount of said rebate and on defendant's promise to pay; that no part has been paid; and that there is justly due thereon the sum of five hundred and sixty-five and fifty-one-hundredths dollars." After the evidence had been submitted, the plaintiffs, for the purpose of conforming the allegations of the petition to the evidence, filed an amendment to the petition, in the following language : "That in the month of February, 1886, Conklin, as alleged in plaintiffs' petition, contracted with the plaintiffs as therein stated; that H. F. Babbit, Harlan Marsh and J. R. Babbit had been shippers for years over the defendant's road, and the said H. F. Babbit applied to Conklin for rates as to the rebate that would be allowed them, and stated that they had some stock on hand, and contemplated buying more, and wanted rates, and that said Conklin stated that the defendant, with other competing lines, had agreed to maintain schedule rates, or had 'pooled,' but that the said agreement was liable to be terminated at

any time; that said Conklin desired the said Babbits and Marsh not to ship over any other lines, and if the 'pool busted,' or agreement was terminated, they could have the rates that H. F. Babbit and J. R. Babbit had been shipping under heretofore; that if there was any offer of any rates below the schedule price, or cut in the schedule rates, that they (Babbits and Marsh) would ship at their old rates, which was a schedule rate of fifty-two dollars per car, less $19.50 rebate to be refunded; that said Conklin said that it was immaterial in whose name the stock was shipped; that said 'pool was busted;' that other companies offered special rates to plaintiffs and that the agreement was at an end; that defendant gave 'cut rates,' and that the twenty-nine cars of live stock were shipped after the contingency had happened, relying on the offer of the defendant; that said Conklin agreed, if any of said competing lines should offer any special rates, or there should be any cut from the schedule rates, that for them to ship, and not leave the defendant's road, but that they should have the old customary rates, which was $19.50 per car rebate to them from the schedule rates; that this contract was made for the benefit of the said Babbits and Marsh, and stock was shipped under the name of Marsh, or Harlan, or H. Marsh, but said contract to the benefit for, and was for the benefit of, all; that said agreed maintenance of rates or pool did not last longer than March 1, 1886, and the said 'pool or agreement' failed and terminated before any shipments, and this fact was well known to plaintiffs at the time the shipments were made by plaintiff. Plaintiffs ask for judgment as prayed in the original and amended petition."

II. Counsel for defendant assign ninety-four errors upon the record before us. They consider but a very small number of the alleged errors, making but five points as grounds for reversing the judgment of the court below. We are required to consider no errors assigned or objections made to the judgment of the court below, except those argued by counsel. All others

demand from us no attention. We will discuss the objections made by counsel in the order of their presentation in the printed argument of defendant.

It is first insisted that plaintiffs are not entitled to recover under the contract set out in the amended petition, for the reason that it is not alleged or shown that the contract was made with plaintiffs. The original petition alleges that the contract was made with plaintiffs. The amended petition shows that the contract was in fact made by H. F. Babbit, and recites the circumstances under which the contract was made, the negotiations leading thereto, and other pertinent matters. It alleges that the contract was made for the benefit of "the Babbits and Marsh." We discover no objections made to the pleadings on the ground that they do not show the individual names of the copartners. The evidence in this case shows without dispute that H. F. Babbit, Harlan Marsh, and J. R. Babbit—the Babbits and Marsh referred to—were the copartners. We notice that the opinion in the case when it was before here states that these parties were the copartners of the firm of Marsh & Co. The petitions, original and amended, show that the contract was made for the benefit of plaintiffs, Marsh & Co. They may maintain an action thereon without joining any other party. Code, sec. 2543; *Rice, v. Savery*, 22 Iowa, 470; *Roberts v. Corbin*, 26 Iowa, 316. The case, both upon the pleadings and evidence, is one where a copartner enters into a contract for the firm which, by action, it is asking to enforce.

*1. PLEADING: contract with firm: parties.*

III. It is next insisted that the contract alleged in the amendment has not been proven. This position seems to be based upon the alleged fact that it is neither alleged nor proved what railroad companies were in the pool. There was surely proof upon that point. The contract, as is shown by the evidence, is based upon the existence of the pool. It was made because there was a pool. Surely the plaintiffs cannot be expected to show the terms of

*2. CONTRACT: condition: pleading and proof.*

the pool, or the parties thereto. It is sufficient to show that a pool existed; and it cannot be said that there was such an absence of evidence upon that point as to require the judgment of the court below to be reversed.

IV. It is also insisted that the evidence fails to show that the pool was broken, or, in the language of the petition, "the pool was busted." There is evidence tending to show that defendant and competing companies had offered special or cut rates, which, under the agreement, entitled plaintiffs to receive the rebate. It cannot be said that there is such an absence of evidence on this branch of the case as to demand another trial. We are not to inquire as to the preponderance or weight of the evidence, but only to determine whether there was sufficient evidence in support of the verdict to negative the claim that it was the result of passion or prejudice.

V. It is next insisted that the evidence fails to show that the agent with whom the contract is alleged to have been made had authority to make

3. RAILROADS: pool: power of agent to contract for rebates.

it. The evidence tended to show that stock agents of defendant had made contracts for rates which were recognized and performed by defendant; that Conklin, with whom the contract was made, was a stock agent. Counsel insist that this evidence fails to establish Conklin's authority to make a contract for a rebate, for the reason that it does not show that rebates were made by such agents, and that when special rates were given it is not shown that there were no arrangements to maintain rates, or, as we understand the position, there was no evidence showing that there was at the time a pool. A contract for a rebate is in effect a contract for a special rate. It is but a matter of making a special rate. The necessity for this method arises in order to enable the company making the rebate to conceal the transaction from other companies with whom they had agreed to maintain rates. Therefore a contract for a rebate is made under authority to make special rates.

VI.   But it is said, in effect, that the authority to make rebates must be shown when a pool exists.   But the very fact of rebates being made—a method to conceal special rates from competitors—implies the existence at the time of pools to which the company is a party. If there were no pool, there would be no rebate—only special rates.

VII.   It is urged that there was no evidence tending to show that a stock agent had ever arranged for rebates for the future.   The contract for special rates or for rebates, of necessity, relate to the future—especially when it pertains to more than one, or a series of shipments.   In the case before us the plaintiffs were about to ship two carloads.   The shipment was not to be made immediately, but as they were ready.   It was understood they were to be made as soon as the stock should be brought to the station.   The contract pertained to other shipments as the business of plaintiffs required them to be made.   Now, it is evident that any arrangement by which rebates were to be made, if it extended to the current business of the shipper, must of necessity pertain to the future.   As we have seen, rebates are made, when pools exist, to take the place of special rates; and, if arrangements therefor are accommodated to the business of the shipper, they of necessity must extend to the future.

VIII.   In our opinion, the court below rightly permitted the amended petition to be filed.   It will be readily seen that it did not change the claim.   It simply stated the form and substance of the contract more fully, leaving the claim of plaintiffs unchanged.   It was therefore authorized under our liberal statutes.   Code, secs. 2686, 2689.   As the claim was not changed, the character and extent of defendant's liability, as set out in the petition, was not changed.   No reason, therefore, existed to support its application for a continuance.   It will be observed that the original petition alleges that the contract was made with Conklin.   No

4. CONTINU-
ANCE: amend-
ment of peti-
tion.

change as to this allegation is made in the amendment. In our opinion, the defendant, by the original petition, was sufficiently informed of the nature of plaintiffs' claim to direct it in the preparation of its defense. The defendant was not entitled to a continuance. In our opinion, the judgment of the district court ought to be

AFFIRMED.